# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:21-cv-00603-MOC-WCM

| | | |
|---|---|---|
| ANDRE ALEXANDER BLAKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the parties' cross Motions for Summary Judgment (Docs. 7, 11), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

## I. Procedural Background

On March 3, 2016, Plaintiff Andre Alexander Blake ("Plaintiff") filed an application for disability insurance benefits. Transcript of the Administrative Record ("AR") 360-361. Plaintiff alleges disability beginning on February 11, 2016.

Plaintiff's claim was initially denied by an Administrative Law Judge ("ALJ") in an opinion issued on February 12, 2019. AR 198-219. On March 30, 2020, the Appeals Council remanded the matter for further proceedings. AR 220-224.

1

On February 18, 2021, following another administrative hearing at which Plaintiff appeared and testified, the same ALJ issued another unfavorable decision. AR 12-75. That decision is the Commissioner's final decision for purposes of this action.

## II.    The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "'mild' stenosis and degenerative disc disease of the lumbar spine; 'mild' dextroscoliosis of the thoracic spine, disc disorder and spondylosis of the cervical spine; degenerative joint disease and quadriceps deconditioning of both knees; radiculopathy; PTSD; depression; anxiety and obstructive sleep apnea." AR 18-19. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work…except he is limited to the occasional pushing and pulling and use of hand and foot controls bilaterally. Furthermore, he is limited to the occasional climbing of ramps and stairs but he is never to climb ladders, ropes, or scaffolds. He is limited to occasional stooping, kneeling and crouching but he is never to crawl. Additionally, he is never to perform overhead reaching but he is able to frequently reach in other directions and frequently handle and finger bilaterally with both his upper extremities. He is to avoid exposure to hazardous work tasks, such as working at unprotected heights or working with or near automated moving machinery. Further, he is to avoid work tasks involving concentrated exposure to extremely hot, cold or humid environments. Moreover,

2

he is capable pf performing routine and repetitive "unskilled" work tasks with a reasoning development level of two-three that is not at a production rate pace (such as automated conveyor belt or assembly line type of work). He is able to respond appropriately to supervision and tolerate no more than occasional interpersonal interaction with co-workers, supervisors, and the public. He is able to adapt to the routine work setting occasional changes and he is capable of using a commonsense understanding to make work-related decisions but should have no exposure to work tasks that require crisis intervention or hostile confrontation, such as telephone solicitation, as [sic] customer service or sales.

AR 27-28.

Applying this RFC, the ALJ found that from February 11, 2016 through the date of his decision, Plaintiff had the ability to perform certain jobs that existed in significant numbers in the national economy such that Plaintiff was not disabled. AR 67.

### III.  Plaintiff's Allegations of Error

Plaintiff argues that the ALJ failed to evaluate appropriately certain opinion evidence and failed to justify his decision not to afford substantial weight to a disability decision issued by the Department of Veterans Affairs, Veterans Benefits Administration ("VA"). Additionally, Plaintiff contends that this matter should be remanded because the ALJ's appointment was improper and because the provision related to the Commissioner's removal is unconstitutional.

3

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the court is not whether Plaintiff

4

is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record and based on the correct application of the law.  Id.

## V. Discussion

### A. Consideration of Opinion Evidence

When evaluating and weighing medical opinions, an ALJ should consider multiple factors, including (1) the examining relationship, (2) the treatment relationship, including the length of the relationship and the frequency of examination and the nature and extent of the relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)–(6). The regulations require "ALJs to consider all of the enumerated factors in deciding what weight to give to a medical opinion." Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 107 n.16 (4th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)) (emphasis in original).

Generally, a treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical evidence and is not inconsistent with other substantial evidence of record. See 20 C.F.R §§ 404.1527(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. §§

404.1527(d)(4); see also Mastro, 270 F.3d at 178 ("Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence").

Here, Plaintiff contends that the ALJ improperly discounted the opinions of Dr. Larry Berman, Dr. Ernest Chander, Dr. T. Rao, and Family Nurse Practitioner Kimberly Noonan.

### 1.    Dr. Larry Berman

Plaintiff takes issue with the ALJ's consideration of opinions of Plaintiff's treating physician, Dr. Berman, as they appear in Dr. Berman's December 22, 2016, March 23, 2017, and June 13, 2017 treatment records. See Doc. 8 at 12-14.[1]

The December 22, 2016 treatment note states that Plaintiff reported continued chronic neck and back discomfort and underlying depression, and that "most" of his neck and back pain stemmed from his previous military service. AR 1744. Plaintiff also requested a letter from Dr. Berman stating that his disability began during his combat-related service. AR 1744. Dr. Berman conducted a physical exam, during which Plaintiff exhibited some cervical and lumbar sacral spinal tenderness with paravertebral muscle spasming,

---

[1] Though the ALJ and the parties reference February 11, 2016 as being Plaintiff's alleged disability onset date, it appears that Plaintiff previously amended his alleged onset date to August 4, 2016. See AR 117. Nevertheless, the opinion evidence on which Plaintiff bases the instant challenge post-dates either date.

6

reviewed Plaintiff's "VA records," and "constructed" a letter to the VA regarding Plaintiff's "disability being related to his work time service and certainly lasting until the present." AR 1745. The ALJ assigned this opinion "little weight" and found it to be "inconsistent with Dr. Berman's treatment notes." AR 54. Specifically, the ALJ stated:

> First Dr. Berman opines that the claimant's impairments are related to his work at the Post Office, yet now they are service connected with the military. While admirable, it appears Dr. Berman is acting as a patient advocate and not as an impartial medical expert. Secondly, there is no indication that a formal functional capacity evaluation has been conducted and finally there is no indication that Dr. Berman is trained, has experience or knowledge in the area of Social Security Disability system.

> AR 54.

In the March 23, 2017 treatment note, Dr. Berman stated that Plaintiff was "unable to work as a result of his disability." AR 1754. The ALJ gave this opinion little weight based on February 13, 2017 x-rays of Plaintiff's cervical spine, which the ALJ stated showed "mild" degenerative disc disease and left neuroforaminal narrowing, Dr. Berman's notation that Plaintiff's laboratory analyses were "unremarkable," and the ALJ's determination that Dr. Berman

was again "acting as a patient advocate instead of an impartial medical expert." AR 54-55.[2] The ALJ went on to conclude:

> Notably Dr. Berman on several occasions advised the claimant to seek alternative employment. Thus, while Dr. Berman may be correct in that the claimant is unable to perform his work at the Post Office, the overall medical evidence does not exclude other jobs in the national economy….

> AR 55.[3]

Following this conclusion, the ALJ cited Dr. Berman's treatment records reflecting that Plaintiff did not exhibit neck stiffness, decreased range of motion, or weakness; that he was noted to be in "fair" health; that Plaintiff was counseled to lose weight and engage in a diet and exercise program, and was recommended to continue conservative treatment using anti-inflammatory drugs. AR 55 (citing AR 2802-2805 (January 13, 2020 record reflecting that Plaintiff's normal mental status exam, full range of motion in neck and

---

[2] The ALJ's decision also states that he gave "little [weight] to the opinion on June 13, 2017, when Dr. Berman stated the claimant is unable to work as a result of his disability, and his recent lab work last year is unremarkable." AR 55. However, while the record contains a June 13 treatment note, that note does not include any statement by Dr. Berman that he believed Plaintiff was unable to work. AR 1755-1760.

[3] It appears that the ALJ is referring to Dr. Berman's 2012 treatment records in which Dr. Berman indicated that it would be best if Plaintiff "were to change jobs to improve his overall quality of life." See AR 1158 (August 2012 treatment record indicating that Dr. Berman counseled Plaintiff to "seek a new job as his current job is causing him a substantial amount of stress and discomfort"). The ALJ did not cite any medical record indicating specifically that Dr. Berman counseled Plaintiff to find alternative employment after Plaintiff's alleged disability onset date.

8

"essentially normal" neck exam, no tenderness in lumbosacral spine, that Plaintiff "appears to be in fair health" but suffers from "depression as well as chronic neck discomfort" and was counseled to lose weight); AR 3011-3013 (indicating that Plaintiff should continue treating his neck pain with anti-inflammatories, and that his depression is "manifested from his chronic neck pain and permanent disability")). Additionally, the ALJ noted that Plaintiff had not been recommended for surgery, a spinal stimulator, nerve blocks, or other more aggressive treatments. AR 55; see also AR 56 (noting that Dr. Michael Cowen, a neurologist, determined that Plaintiff was not a good surgical candidate based on the lack of clinical and radiographic findings (citing AR 1073-1074 (January 5, 2016 note in which Dr. Cowan stated he did "not think that the risks of the surgery would be justified given the lack of clinical findings and radiographic findings")).

Plaintiff takes issue with the ALJ's decision to assign Dr. Berman's opinions little weight. See Doc. 8 at 12. Additionally, Plaintiff contends that the ALJ improperly substituted his own opinion when considering Plaintiff's February 2017 x-rays, and that the ALJ failed to consider Dr. Berman's other treatment records that supported greater limitations. Doc. 8 at 13-14.

The undersigned agrees with Plaintiff that the ALJ's analysis of Dr. Berman's opinions is problematic in some respects. First, the ALJ's decision to discount Dr. Berman's opinions because the ALJ found he was acting as a

"patient advocate" was apparently based on the ALJ's view that Dr. Berman's statement that Plaintiff's limitations were due to his military service was inconsistent with a separate statement that Plaintiff's limitations were due to Plaintiff's work at the Post Office. However, Dr. Berman's treatment records indicate that Plaintiff attributed his neck pain both to his military service and his work at the Post Office. See AR 1140, 1780 (January 8, 2018 treatment record reflecting that Plaintiff reported to Dr. Berman that he continued to have chronic neck problems as a result of "previous work-related injuries"); AR 3011 (May 5, 2020 treatment note reflecting that Plaintiff reported to Dr. Berman that Plaintiff believed his chronic neck discomfort was because of his work at the Post Office); AR 1140 (December 22, 2016 treatment record reflecting that Plaintiff reported that "most" of his neck and back pain stemmed from his previous military service). Further, Dr. Berman did not expressly state that these causes were mutually exclusive. AR 1380 (December 22, 2016 letter from Dr. Berman stating that "[r]eview of [Plaintiff's] records clearly indicate that a large portion of this chronic disability is attributed to his previous military service").

Second, the undersigned agrees that Dr. Berman was not required to conduct a "formal functional capacity evaluation," and that the ALJ failed to discuss certain of Dr. Berman's other treatment records.

However, the records cited by Plaintiff appear to be consistent with the ALJ's determination that Plaintiff received conservative treatment. See AR 1780-1782 (January 2018 record); AR 2818-2820 (February 2019 record reflecting "some cervical muscle tenderness with some limited range of motion over the lower cervical spine" and noting Plaintiff's "neck pain is chronic. At this point he is living with [it] but having substantial difficulties. He continues to take Tylenol as necessary and occasionally a non-steroidal anti-inflammatory"); AR 2815-2817 (June 2019 record reflecting Plaintiff's "neck pain is chronic and debilitating. He will continue on his anti-inflammatories"); AR 2806-2808 (October 2019 record reflecting "intermittent neck discomfort especially on the right side of his neck. It appears to be stable"); AR 3014-3020 (June 2020 record reflecting Plaintiff had difficulty turning his head from side to side, but also noting that Plaintiff's anti-inflammatories have been "somewhat helpful").

Further, Plaintiff does not identify what additional functional limitations he contends should have been included in his RFC. See Keener v. Kijakazi, No. 1:21-cv-79-MOC, 2022 WL 264878, at *5 (W.D.N.C. Jan. 27, 2022) ("It is also Plaintiff's burden to establish a specific functional limitation (in excess of the ALJ's RFC finding)") (citing Durham v. Saul, No. 3:20-cv-00295-KDB, 2021 WL 1700353, at *5 (W.D.N.C. Apr. 29, 2021) ("Plaintiff not the Commissioner bears the burden of establishing h[is] limitations....") (citing

11

Hendrickson v. Berryhill, No. 1:16-cv-00367-MOC-DLH, 2018 WL 1431751, at *7 (W.D.N.C. Mar. 22, 2018) ("A claimant has the burden to prove the extent of his functional limitations; it is not the ALJ's burden to prove a lack of limitations")) (citing Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013)).

Finally, to the extent Plaintiff's position is that the ALJ should have accepted Dr. Berman's general opinion that Plaintiff was unable to work, such an opinion was not entitled to any special evidentiary weight. See Sharp v. Colvin, 660 Fed. Appx. 251, 256 (4th Cir. 2016) (unpubl.) ("Ultimately, the ALJ is not bound by a treating physician's opinion that a claimant is disabled or unable to work, because that determination is reserved for the ALJ") (citing 20 C.F.R. § 404.1527(d)(1)); Slaydon v. Saul, No. 7:18-CV-54-FL, 2019 WL 3660573, at *5 (E.D.N.C. Aug. 6, 2019) (a medical source opinion that a claimant is disabled or unable to work is not entitled to any weight).

### 2.    Dr. Ernest Chander

Plaintiff also contends that the ALJ improperly discounted a Mental Residual Functional Capacity Assessment completed by Dr. Chander in December of 2016 (the "Mental RFC," AR 1381-1383), in which Dr. Chander indicated that Plaintiff had "marked" limitations in his ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, maintain regular attendance, complete a normal workweek without interruption from psychologically based symptoms, accept instruction,

get along with coworkers, respond to changes in the work setting, or travel in unfamiliar places. Id. Additionally, Dr. Chander indicated that Plaintiff had "moderate" limitations in understanding short and simple instructions, remembering work procedures, carrying out detailed instructions, working in close proximity with others, asking for assistance, being aware of hazards, or setting realistic goals. Id. Finally, Dr. Chander remarked that "[d]ue to both knees and several back vertebral disc degenerative conditions, the pain is often too much. Lifting even moderate weight or standing for long periods or bending are very hard." AR 1383.

The ALJ assigned "partial" weight to Dr. Chander's opinions and found that Plaintiff had "mild" limitations in his ability to understand, remember or apply information and moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing himself, based on "not only Dr. Chander's treatment notes but [also] the preponderance of the evidence." AR 57 (citing AR 1323-1324; 1314; 1565; 1511 (September 2016, December 2016, December 2017, and April 2018 mental status exams reflecting that Plaintiff was alert, oriented, and displayed adequate attention and concentration) and AR 1311 (December 2016 psychiatry note indicating the intensity of Plaintiff's mental diagnoses as "low" or "in remission")). The ALJ further noted that Plaintiff had been prescribed medication for his depression, but that the record did not contain any

13

recommendation for "hospitalization, electroshock therapy or more intensive counseling." AR 58. Finally, the ALJ stated that "while admirable it appears Dr. Chander is acting as a patient advocate and not as an impartial medical expert, there is no indication that Dr. Chander has the knowledge, experience, or training in the area of Social Security disability and finally, the ultimate determination of disability rests with the Commissioner." AR 58.

Plaintiff argues that the ALJ decision to discount Dr. Chander's opinion because Dr. Chander was acting as a "patient advocate" was improper, and that other mental health records support greater limitations. See Doc. 8 at 14.

The undersigned agrees that the ALJ did not fully explain his statement that Dr. Chander was acting as a "patient advocate." However, the ALJ did cite specific mental health records in support of his finding that Plaintiff was not as limited as described by the Mental RFC. Further, although Plaintiff argues that the "record reveals [Plaintiff] socially isolated himself, had no friends, socialized only with his parents, and mistrusted others," the records cited by Plaintiff also reflect that Plaintiff attended a "Veteran's Benefit" fair, reported various leisure activities, and responded well to therapy sessions Doc. 8 at 14 (citing AR 662 (April 2016 mental health note in which Plaintiff reported very little contact with anyone other than his parents; therapist noted Plaintiff had a positive reaction to the session), AR 1569 (November 2017 mental health note in which Plaintiff reported increased social isolation but therapist also noted

Plaintiff was "somewhat interested" in increasing socialization and that Plaintiff had a positive reaction to therapy), AR 1509-1510 (April 2018 mental health note in which Plaintiff reported avoidance behaviors but also reported his leisure activities included cleaning, watching television, and reading), AR 1499 (May 2018 mental health note in which Plaintiff reported isolation and mistrust of others, but also that he recently attended a "Veteran's Benefit" fair), AR 2867 (December 2019 mental health note reflecting that Plaintiff reported self-isolation and avoidance of public places)).

### 3.    Dr. Rao and Kimberly Noonan

Finally, Plaintiff contends that the ALJ improperly gave "little weight" to the opinions of Dr. Rao, a treating neurologist, and Kimberly Noonan, a family nurse practitioner, because these providers did not perform functional capacity evaluations. Doc. 8 at 15.

The ALJ, however, provided additional reasons for discounting these opinions, and Plaintiff has not challenged those additional reasons. See AR 59 (ALJ's discussion of subsequent treatment and objective imaging and statement that there "apparently was not [a] recommendation for surgical intervention, pain management, spinal cord stimulator or other treatment modalities to treat musculoskeletal impairments"); id. (ALJ noting that he was giving "little weight" to NP Noonan's opinions "as the claimant appears to have self-reported that he is on permanent restrictions or light duty and he is not to

15

push or lift over 15-pounds"); see also AR 1212 (June 2015 medical record reflecting visit with NP Noonan in which Plaintiff reported working for the Post Office with restrictions).

Accordingly, the undersigned will not recommend remand based on the ALJ's treatment of the opinion evidence discussed above.

### B. Decision of the VA

In making a disability determination in this matter, the ALJ was required to consider all relevant record evidence, including disability decisions rendered by other agencies. SSR 06-03p, 2006 WL 2329939.[4] The Fourth Circuit held in Bird v. Commissioner of Social Sec, Admin. that, generally, "the [Commissioner] must give substantial weight to a VA disability rating" in making a disability determination, though "an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." 699 F.3d 377, 343 (4th Cir. 2012). "[I]n order to demonstrate that it is appropriate to accord less than substantial weight to [a VA decision], an ALJ must give persuasive, specific, valid reasons for doing so that are supported by the record." Woods v. Berryhill, 888 F.3d 686, 692 (4th

---

[4] For claims filed on or after March 27, 2017, the Commissioner will not analyze a disability decision made by another agency. 2017 WL 1105348. However, Plaintiff filed his application prior to March 27, 2017.

Cir. 2018); see also Kiser v. Saul, 821 Fed. Appx. 211, 215 (4th Cir. 2020) (unpubl.) (same).

"For example, an ALJ could explain which aspects of the prior agency decision he finds not credible and why, describe why he finds other evidence more credible, and discuss the effect of any new evidence made available after" the prior agency decision. Woods, 888 F.3d at 692. Without such an explanation by the ALJ, a court "cannot engage in meaningful review." Id. at 693.

Here, in an August 25, 2020 decision, the VA determined that Plaintiff was entitled to "individual unemployability" effective August 9, 2016 due to Plaintiff's mental and physical impairments (the "VA Decision," AR 511-514). The VA Decision specifically referenced examinations performed on September 9, 2016, May 8, 2017, May 16, 2017, May 29, 2017, and July 15, 2020 and stated that these examinations reflected that Plaintiff had difficulties in establishing and maintaining effective work and social relationships and adapting to stress; that Plaintiff's "thoracolumbar spine disability" prevented prolonged standing, sitting, walking, bending, squatting, using stairs, or reaching forward; and that Plaintiff could not turn his neck without pain due to "cervical spine disability." AR 513-514.[5]

_____

[5] The undersigned has not been able to locate the May 29, 2017 or July 15, 2020 records in the administrative record.

17

In assigning "partial weight" to the VA Decision, the ALJ stated that the VA "has a different definition for disability than the Social Security Administration." AR 61. The ALJ acknowledged that VA disability ratings would generally be afforded "substantial weight," but went on to state that "less weight may be given when the record, as in this case, clearly demonstrates that such a deviation is appropriate, for reasons discussed throughout this decision." Id.

The ALJ then acknowledged the September 9, 2016 Compensation and Pension examination performed by Dr. John Taylor of the VA mental health clinic, which noted that Plaintiff had difficulty adapting to stressful work-like settings. AR 63. The ALJ explained, however, that Plaintiff "lives by himself, visits his parents[,] was drinking half a gallon of liquor a day[6]" and that Dr. Taylor had indicated that Plaintiff was capable of managing his financial affairs. The ALJ further stated:

> Notably, the claimant was aware that this [Compensation and Pension] examination was necessary for him to obtain service-connected disability. Thus, independently evaluating the underlying medical evidence as previously discussed demonstratives that claim severity of subjective back pain is not consistent or proportionate to the objective

---

[6] In another portion of his decision, the ALJ correctly referenced that Dr. Taylor's September 2016 note indicated that Plaintiff reported he drank half a gallon of liquor per week. AR 40 (citing AR 1327).

medical imaging, x-rays and MRIs, as well as clinical
testing and physical evaluations.

AR 63 (citing AR 1325-1327).

The ALJ also stated that Plaintiff's treatment for musculoskeletal
complaints had been "relatively conservative" with "no current
recommendations for surgical intervention, no medical requirement for use of
an assistive device to ambulate, and no consistent clinical findings." AR 63.
The ALJ, though, did not specifically cite any of Plaintiff's records following
this statement.

Immediately following his discussion of the VA Decision, the ALJ cited
specific medical records when considering Plaintiff's mental impairments of
PTSD, depression, and anxiety. See AR 64 (stating that Plaintiff responded
well to therapy sessions, decided to take a "break" from PTSD therapy, that
Plaintiff's mental status exams were largely normal, and that Plaintiff's
treatment for mental health symptoms had been relatively conservative
(citing, among others, AR 1305; 1446)). It is not clear, however, if the ALJ
discounted the VA Decision based on these records.

More generally, other portions of the ALJ's Decision—that is,
information presented in connection with issues other than the VA Decision—
may support the ALJ's characterization of Plaintiff's treatment and subjective
pain. See e.g., AR 55 (citing AR 2802-2805 (reflecting Plaintiff's "essentially

19

normal" neck exam); AR 3011-3013 (indicating that Plaintiff should continue treating his neck pain with anti-inflammatories)); AR 56 (noting that Dr. Michael Cowen, a neurologist, determined that Plaintiff was not a good surgical candidate based on the lack of clinical and radiographic findings (citing AR 1073-1074)); AR 59 (ALJ's statement that "[n]otably, the claimant's straight leg tests have been negative and his gait normal without any prescription of ambulatory assistive device, that exams reflected that Plaintiff's neck was "supple with a full range of motion") (citing AR 2937-2939; 2794-2799)). The ALJ, though, did not specifically refer back to these sections of his decision or the records supporting them when discounting the VA Decision. Rather, the ALJ generally referenced "the underlying medical evidence as previously discussed" without specifically identifying that evidence.[7]

Additionally, the ALJ did not address the persuasiveness of the other VA examinations cited in the VA Decision. See e.g. AR 1646-1656 (May 8, 2017 record, cited in VA Decision, indicating that Plaintiff exhibited positive straight leg testing and that the examiner determined that Plaintiff could not engage in prolonged sitting or standing).

---

[7] The ALJ's decision is lengthy and includes many pages that recite the medical evidence without significant analysis. This presentation makes it, at times, difficult to follow the ALJ's reasoning.

The ALJ also did not explain why Plaintiff's awareness that he was participating in a Compensation and Pension examination would be a basis for affording less weight to the VA Decision.

Consequently, and considering the requirement that an ALJ provide "persuasive, *specific*, [and] valid reasons" for the decision to discount the VA Decision, the undersigned will recommend remand on this basis. Woods, 888 F.3d at 692 (emphasis added); see also Wilson v. Saul, No. 3:18-cv-00455-MR, 2019 WL 4727911, at *5 (W.D.N.C. Sept. 26, 2019) (ALJ's statements regarding Plaintiff's conservative treatment, mild physical examinations, and reported improvements, which were unsupported by any citation, were insufficient to "clearly demonstrate" deviation from the requirement that the VA decision be afforded substantial weight); Dixon v. Berryhill, No. 3:16-CV-254-MR, 2017 WL 4248812, at *8 (W.D.N.C. Sept. 25, 2017) ("the ALJ set forth no analysis to support the conclusory finding of inconsistency of the VA rating with other evidence of record. The Court cannot be left to guess regarding the basis of the ALJ's conclusions on this issue").

## C. Plaintiff's Constitutional Challenges

### 1.  Federal Vacancies Reform Act

Plaintiff also argues that then-Acting Director Berryhill was not properly appointed, in light of the Federal Vacancies Reform Act, at the time she ratified

the appointment of the ALJ in this case on July 16, 2018, such that the ALJ's ratification was "in violation of the Appointments Clause…." Doc. 8 at 11.

In Edwards v. Commissioner of Social Security, No. 1:21-cv-00134-RJC, 2022 WL 3352298, at *4 (W.D.N.C. Aug. 12, 2022), a court in this district rejected this argument and explained:

> Plaintiff argues that Acting Director Berryhill ratified the appointment of the ALJ in this case without proper authority as it was after the 210-day limit established by Congress under 5 U.S.C. § 3346. "Under the Federal Vacancies Reform Act (FVRA), 5 U.S.C. § 3346(a)(1), even if Ms. Berryhill's initial eligibility to serve as Acting Commissioner previously expired, then-President Trump nominated Andrew Saul for Commissioner in April 2018, such that Ms. Berryhill once again was eligible to serve as Acting Commissioner. The FVRA incorporates a spring-back provision, which permits the acting officer to begin performing the functions and duties of the vacant office again upon the submissions of a nomination, even if the 210-day period expired before that nomination was submitted." Hutchens v. Kijakazi, No. 1:20-CV-1124, 2021 WL 5834409, at *7 (M.D.N.C. Dec. 9, 2021). Here, Acting Director Berryhill ratified the appointment of the ALJ in this case on July 16, 2018, after President Trump nominated Mr. Saul for the position. This triggered the spring-back provision, and Acting Director Berryhill was properly serving at the time she ratified the ALJ's appointment.

Other courts have reached similar conclusions. See Taylor v. Kijakazi, No. 1:21CV648-JLW-WLO, 2022 WL 4668273, at *9 (M.D.N.C. Aug. 2, 2022) ("the undersigned agrees with the other judges from this Court, Circuit, and others who have considered this issue at considerable length and concluded

22

that this appointment clause argument has no merit") (citing <u>Williams v. Kijakazi</u>, No. 1:21-CV-141-GCM, 2022 WL 2163008, at *2-4 (W.D.N.C. June 15, 2022)), <i>recommendation adopted</i>, 2022 WL 4621418 (M.D.N.C. Sept. 30, 2022); <u>see also</u> <u>Black v. Kijakazi</u>, No. 1:21-CV-322-KDB, 2022 WL 2977340, at *3 (W.D.N.C. July 27, 2022) (finding that acting Commissioner Berryhill was validly serving under the Federal Vacancies Reform Act).

## 2. Removal Provision

42 U.S.C. § 902(a)(3) provides that "[a]n individual serving in the office of Commissioner [of the Social Security Administration] may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office."

Citing Section 902(a)(3), <u>Collins v. Yellen</u>, 141 S.Ct. 1761, 210 L.Ed.2d 432 (2021), and <u>Seila Law, LLC v. Consumer Financial Protection Bureau</u>, 140 S.Ct. 2183, 207 L.Ed.2d 494 (2020), Plaintiff argues that the ALJ's decision is void because it was not reviewable by anyone subject to removal by the President at-will. Doc. 8 at 22-27; <u>see also</u> 2021 WL 2981542 (Office of Legal Counsel Memorandum Opinion which concluded that the statutory removal restriction in 42 U.S.C. § 902(a)(3) is unenforceable).

However, arguments of this nature have been rejected by numerous courts. <u>See</u> <u>e.g.</u>, <u>Murray v. Kijakazi</u>, No. 3:21-cv-489-MOC, 2022 WL 2252603, at *5 n. 1 (W.D.N.C. June 22, 2022) (explaining that "[t]his Court and many

others have repeatedly rejected Social Security plaintiffs' claims that ALJ's decisions are constitutionally defective based on a separation of powers argument," collecting cases, and stating that "the Court is not aware of <u>any</u> case holding to the contrary….") (emphasis in <u>Murray</u>); <u>Osborne v. Kijakazi</u>, 5:21-cv-9-MOC, 2021 WL 5890668, at *3 (W.N.D.C. Dec. 13, 2021) ("The <u>Collins</u> Court reasoned that the relevant agency officials were 'properly appointed' pursuant to a statute that exhibited 'no constitutional defect in the … method of appointment' and that 'the unlawfulness of [a] removal provision' does not strip [an official] of the power to undertake the other responsibilities of his office[.]'"); <u>Chuenanan v. Commissioner of Social Security</u>, No. 1:21-cv-00086-RJC, 2022 WL 1416421 (W.D.N.C. May 4, 2022); <u>Watkins v. Kijakazi</u>, 1:20-cv-00380-MR-WCM, 2022 WL 1101760 (W.D.N.C. Jan. 21, 2022), *recommendation adopted*, 2022 WL 822166 (W.D.N.C. March 18, 2022); <u>see also</u> <u>Helms v. Commissioner of Social Security</u>, No. 3:20-cv-589-MOC, 2021 WL 5710096, at *2 (W.D.N.C. Dec. 1, 2021) ("The Court finds that it is implausible that the Commissioner's protection from removal from office, whether constitutional or not, could have affected ALJ Goodson's decision or any other aspect of the administrative litigation in a material way"); <u>Hutchens v. Kijakazi</u>, No. 1:20CV1124, 2021 WL 5834409, at *11 (M.D.N.C. Dec. 9, 2021), *recommendation adopted*, (M.D.N.C. Jan. 5, 2022) ("Unlike Appointments Clause cases, where courts have found the very authority under which a

government official has acted unconstitutional…the unconstitutional removal provision at issue here did not impact then-Commissioner Saul's ability to carry out the duties of his office") (internal citations omitted); <u>Brand v. Kijakazi</u>, 575 F.Supp.3d 1265, 1274 (D. Nev. Dec. 10, 2021) (rejecting plaintiff's argument that President Biden's statements regarding Saul's firing evidenced a "strong possibility" of harm as "too conclusory, speculative, and attenuated").

## VI. Recommendation

The undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 7) be **GRANTED**, and that the Commissioner's Motion for Summary Judgment (Doc. 11) be **DENIED.**

Signed: January 26, 2023

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See <u>Thomas v. Arn</u>, 474 U.S. 140, 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).